AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Shattered Black Phone
Seizure No. 20232501000030701-0004
("Target Device")

) Case No. **23mj1704**
)
)
)
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 841(a)(1) | Possession with Intent to Distribute Controlled Substances |
| 21 USC Sec. 846 | Conspiracy to Distribute Controlled Substances |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Waverly Monet Giannotti, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____telephone_____ *(specify reliable electronic means)*.

Date: May 15, 2023

*Judge's signature*

City and state: San Diego, California      Hon. Allison H. Goddard, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

>Shattered Black Phone
>Seizure No. 2023250100030701-0004
>**("Target Device")**

The **Target Device** is currently in the possession of Homeland Security Investigations, located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of April 2, 2023, up to and including May 2, 2023:

a. tending to indicate efforts to distribute controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the distribution of controlled substances within United States;

c. tending to identify co-conspirators, criminal associates, or others involved in distribution of fentanyl powder, or some other federally controlled substance, within the United States;

d. tending to identify travel to or presence at locations involved in the distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846.

# AFFIDAVIT

I, Special Agent Waverly Monet Giannotti, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

> Shattered Black Phone
>
> Seizure No. 2023250100030701-0004
>
> ("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841(a)(1) and 846 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Jesus Enrique AGUIRRE Medina for possession with intent to distribute and conspiracy to distribute approximately 3.55 kilograms (7.82 pounds) of fentanyl powder throughout the United States. The Target Device is currently in the custody of Homeland Security Investigations and located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since 2021. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in importation, possession with intent to

distribute, and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. With respect to distribution of narcotics, I am aware that narcotics traffickers frequently communicate with the individual receiving the narcotics. These communications can occur before, during and after the narcotics are distributed throughout the United States. For example, prior to the distribution, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the persons receiving the narcotics. When the distribution is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. Furthermore, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the distribution of narcotics may yield evidence:

    a. tending to indicate efforts to distribute controlled substances within the United States;

  b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the distribution of controlled substances within United States;

  c.  tending to identify co-conspirators, criminal associates, or others involved in distribution of fentanyl powder, or some other federally controlled substance, within the United States;

  d.  tending to identify travel to or presence at locations involved in the distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

  e.  tending to identify the user of, or persons with control over or access to, the Target Device; and/or

  f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7. On May 2, 2023, at approximately 3:20 p.m., an HSI undercover special agent arrived at a Home Depot parking lot in Chula Vista, California, to conduct a transaction for approximately 3 kilograms of fentanyl powder in exchange for $48,000 United States Dollars (USD).

8. The undercover special agent understood that s/he was to meet with a grey Dodge Charger and a white Volkswagen Jetta. The undercover special agent met with the occupant of a grey Dodge Charger, which was driven by Marrk Anthony VARGAS (VARGAS). VARGAS in effect asked the undercover special agent to see the money and in return the undercover special agent asked to see the product. Around this time, a white Volkswagen Jetta approached the parties' location in the parking lot. The white Volkswagen Jetta was driven by Jesus Enrique AGUIRRE Medina (AGUIRRE).

9. AGUIRRE opened a vehicle door and then pushed a large wheeled speaker box towards the undercover special agent. AGUIRRE also provided the undercover special agent with a screwdriver. The undercover special agent started to unscrew a part of the

speaker box while the speaker box was still in the Volkswagen Jetta. The undercover special agent observed bricks wrapped in black tape inside the speaker box at this time.

10. Both VARGAS and AGUIRRE were placed under arrest at approximately 3:50 p.m.

11. The bricks weighed approximately 3.55 kilograms (7.82 pounds) and contained a white powdery substance. A sample of the substance in the bricks tested positive for the properties of fentanyl.

12. VARGAS admitted he was to be paid approximately $500.00 USD for transporting the narcotics proceeds.

13. VARGAS and AGUIRRE were arrested and charged with violations of Title 21, United States Code Sections 841(a)(1) and 846, Distribution of a Controlled Substance and Conspiracy to Distribute a Controlled Substance.

14. The Target Device was found and seized by an HSI SA. The Target Device was found in AGUIRRE's pocket.

15. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device.  In light of the above facts and my experience and training, there is probable cause to believe that AGUIRRE was using the Target Device to communicate with others to further the distribution of illicit narcotics within the United States.  Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling and/or distribution event in the days and weeks prior to an event. Co-conspirators are also often unaware of other co-conspirators' arrests and will continue to attempt to communicate with a co-conspirator after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as AGUIRRE, to attempt to minimize the amount of time they were involved in their smuggling or distribution activities, and for

the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on April 2, 2023, up to and including May 2, 2023.

## METHODOLOGY

16. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17. Following the issuance of this warrant, I will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## CONCLUSION

19. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device will yield evidence of AGUIRRE's violations of Title 21, United States Code, Sections 841(a)(1) and 846. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Waverly Monet Giannotti
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 15th day of May 2023.

Honorable Allison H. Goddard
United States Magistrate Judge